**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

UNITED STATES OF AMERICA

Plaintiff,

vs.

IDA DUNSTON, et al.,

Defendants.

Civil Action No. 2:18-cv-01484-SDW-SCM

**CERTIFICATION OF**
**FRANK J. MARTONE ESQ.**

FRANK J. MARTONE, Esq., does hereby certify as follows:

1. I am an attorney admitted to practice before this Court and am the shareholder with the firm Frank J. Martone, P.C., attorneys for plaintiff in the above matter. As such, I have knowledge of the facts contained herein. I make this Certification in support of plaintiff's application for an Order allowing to enter judgment against Paterson Habitat for Humanity, Inc. City of Paterson, and State of New Jerseys establishing plaintiff's priority over the Affordable Housing restrictions, and extinguishing said restrictions.

2. On or about April 24, 2013, defendant Ida Dunston, Individually (hereinafter referred to as "defendant") executed to United States Small Business Administration (hereinafter referred to as "USA") a mortgage in the sum of $28,100.00, on property he owns at 78 Clinton Street, Paterson, NJ 07522 (the "Property"). The aforesaid mortgage was recorded in the Office of the Clerk of Passaic County on July 29, 2013 in Mortgage Book M12722 at Page 160. See, true copy of the Mortgage, annexed hereto as Exhibit A.

3. On April 24, 2013, defendant executed to USA a Note to secure the sum of $28,100.00, with the initial interest rate of 1.688% per annum.

4. The aforesaid Note was secured by the mortgage set forth above. See true copy of the Note, annexed hereto as Exhibit B. Defendant defaulted under the terms and conditions of the above stated Note by failing, refusing and neglecting to make the March 24, 2014 payment and all payments due thereafter. As a result of defendant's default, plaintiff filed its Foreclosure Complaint on February 2, 2018.

5. Paterson habitat for Humanity, Inc, City of Paterson, and the State of New Jersey were named a party defendant to the foreclosure for any right title or interest it has to the Unit by virtue the property being a Low Income Eligible Housing pursuant to the Reservations, Covenants and Restrictions set forth in Deed dated January 24, 1996, recorded March 1, 1996 in Book U143, Page 183 A copy of the Agreement is annexed hereto as Exhibit C.

6. The Affordable Housing Agreement annexed as Exhibit C notes that the Restrictive Covenants shall begin on the date of the Deed, [January 24, 1996] and shall terminate on the date of the first non-exempt title transaction occurring after twenty (2) years from the Commencement Date. Further, deed defines "Exempt Transactions" as "the following "non-sales" title transactions (1) Transfer of ownership between husband and wife; (2) Transfer of ownership between former spouses ordered as a result of a judicial decree of divorce.. (3) Transfer of ownership through an Executor's Deed… (4) Transfer of ownership by court order. (5) Intestate transfers.. All other title transfers are non-exempt."

7. Since, Plaintiff's foreclosure action will result in a transfer of ownership by virtue of a Marshal Sale; this is not an exempt transaction as it is a sale, and it is not specifically excluded in the definition. Furthermore, it is now Twenty (22) years since execution of the deed. Thus, by the language contained in the Agreement itself, plaintiff is entitled to extinguish the affordability restrictions and foreclose free and clear.

8. Therefore, plaintiff respectfully requests that the Court enter an Order entering judgment against Paterson habitat for Humanity, Inc, City of Paterson, and the State of New Jersey thereby establishing plaintiff's priority over the Affordable Housing restrictions and extinguishing said restrictions.

9. I certify that the foregoing statements are true. I understand that if any of the foregoing statements are willfully false, I am subject to punishment.

***/s/Frank J. Martone***______
FRANK J. MARTONE, ESQ.

Dated: June 4, 2018

# EXHIBIT A



MAIL ANY NOTICE OF DEFAULT TO:
U.S. SMALL BUSINESS ADMINISTRATION
801 Tom Martin Drive Suite 120
Birmingham, AL 35211

THIS INSTRUMENT PREPARED BY:
SCOTT W. MONTGOMERY, Attorney

WHEN RECORDED MAIL TO:
U.S. SMALL BUSINESS ADMINISTRATION
14925 Kingsport Road
Fort Worth, TX 76155-2243

IDA DUNSTON
Application

KRISTIN M. CORRADO
CLERK
PASSAIC COUNTY
New Jersey
INSTRUMENT NUMBER
2013041939
RECORDED ON
Jul 29, 2013
10:14:38 AM
BOOK:M12722
PAGE:160
Total Pages: 7

| | |
|---|---|
| NJ PRESERVATION ACCOUNT | $35.00 |
| RECORDING FEES - RECORDER OF DEEDS | $55.00 |
| HOMELESSNESS TRUST FUND | $3.00 |
| TOTAL PAID | $93.00 |

INV: 995539 USER: SF

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# MORTGAGE
## (Direct)

This mortgage made and entered into this **24th** day of **April, 2013**, by and between **IDA DUNSTON, WHO ACQUIRED TITLE AS IDA MAE DUNSTON, A SINGLE PERSON, 78 CLINTON STREET, PATERSON, NJ 07522** (hereinafter referred to as mortgagor) and the Administrator of the U.S. Small Business Administration, an agency of the Government of the United States of America (hereinafter referred to as mortgagee), who maintains an office and place of business at **801 Tom Martin Drive Suite 120, Birmingham, AL 35211.**

**WITNESSETH,** that for the consideration hereinafter stated, receipt of which is hereby acknowledged, the mortgagor does hereby mortgage, sell, grant, assign, and convey unto the mortgagee, his successors and assigns, all of the following described property situated and being in the County of **PASSAIC**, State of New Jersey.

**Described in Exhibit "A" attached hereto and made a part hereof.**

Together with and including all buildings, all fixtures including but not limited to all plumbing, heating, lighting, ventilating, refrigerating, incinerating, air conditioning apparatus, and elevators (the mortgagor hereby declaring that it is intended that the items herein enumerated shall be deemed to have been permanently installed as part of the realty), and all improvements now or hereafter existing thereon; the hereditaments and appurtenances and all other rights thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, all rights of redemption, and the rents, issues, and profits of the above described property (provided, however, that the mortgagor shall be entitled to the possession of said property and to collect and retain the rents, issues, and profits until default hereunder). To have and to hold the same unto the mortgagee and the successors in interest of the mortgagee forever in fee simple or such other estate, if any, as is stated herein.

FOR THE PURPOSE OF SECURING: (1) Payment of the principal and interest as set forth above; (2) Payment of any and all obligations and liability, which are now due or may hereafter become due from Mortgagor; (3) Performance of each agreement of Mortgagor hereincontained; (4) Payment of all sums to be paid to Mortgagee pursuant to the terms hereof.

The mortgagor covenants that he is lawfully seized and possessed of and has the right to sell and convey said property; that the same is free from all encumbrances except as hereinabove recited; and that he hereby binds himself and his successors in interest to warrant and defend the title aforesaid thereto and every part thereof against the claims of all persons whomsoever.

This instrument is given to secure the payment of a promissory note dated **April 24, 2013** in the principal sum of **$28,100.00** and maturing on **April 24, 2043**, signed by or on behalf of **IDA DUNSTON.**

1. The mortgagor covenants and agrees as follows:

*a.* He will promptly pay the indebtedness evidenced by said promissory note at the times and in the manner therein provided.

*b.* He will pay all taxes, assessments, water rates, and other governmental or municipal charges, fines, or impositions, for which provision has not been made hereinbefore, and will promptly deliver the official receipts therefore to the said mortgagee.

*c.* He will pay such expenses and fees as may be incurred in the protection and maintenance of said property, including the fees of any attorney employed by the mortgagee for the collection of any or all of the indebtedness hereby secured, or for foreclosure by mortgagee's sale, or court proceedings, or in any other litigation or proceeding affecting said premises. Attorneys' fees reasonably incurred in any other way shall be paid by the mortgagor.

*d.* For better security of the indebtedness hereby secured, upon the request of the mortgagee, its successors or assigns, he shall execute and deliver a supplemental mortgage or mortgages covering any additions, improvements, or betterments made to the property hereinabove described and all property acquired by it after the date hereof (all in form satisfactory to mortgagee). Furthermore, should mortgagor fail to cure any default in the payment of a prior or inferior encumbrance on the property described by this instrument, mortgagor hereby agrees to permit mortgagee to cure such default, but mortgagee is not obligated to do so; and such advances shall become part of the indebtedness secured by this instrument, subject to the same terms and conditions.

*e.* The rights created by this conveyance shall remain in full force and effect during any postponement or extension of the time of payment of the indebtedness evidenced by said promissory note or any part thereof secured hereby.

*f.* He will continuously maintain hazard insurance, of such type or types and in such amounts as the mortgagee may from time to time require on the improvements now or hereafter on said property, and will pay promptly when due any premiums therefor. All insurance shall be carried in companies acceptable to mortgagee and the policies and renewals thereof shall be held by mortgagee and have attached thereto loss payable clauses in favor of and in form acceptable to the mortgagee. In event of loss, mortgagor will give immediate notice in writing to mortgagee, and mortgagee may make proof of loss if not made promptly by mortgagor, and each insurance company concerned is hereby authorized and directed to make payment for such loss directly to mortgagee instead of to mortgagor and mortgagee jointly, and the insurance proceeds, or any part thereof, may be applied by mortgagee at its option either to the reduction of the indebtedness

hereby secured or to the restoration or repair of the property damaged or destroyed. In event of foreclosure of this mortgage, or other transfer of title to said property in extinguishment of the indebtedness secured hereby, all right, title, and interest of the mortgagor in and to any insurance policies then in force shall pass to the purchaser or mortgagee or, at the option of the mortgagee, may be surrendered for a refund.

*g.* He will keep all buildings and other improvements on said property in good repair and condition; will permit, commit, or suffer no waste, impairment, deterioration of said property or any part thereof; in the event of failure of the mortgagor to keep the buildings on said premises and those erected on said premises, or improvements thereon, in good repair, the mortgagee may make such repairs as in its discretion it may deem necessary for the proper preservation thereof; and the full amount of each and every such payment shall be immediately due and payable and shall be secured by the lien of this mortgage.

*h.* He will not voluntarily create or permit to be created against the property subject to this mortgage any lien or liens inferior or superior to the lien of this mortgage without the written consent of the mortgagee; and further, he will keep and maintain the same free from the claim of all persons supplying labor or materials for construction of any and all buildings or improvements now being erected or to be erected on said premises.

*i.* He will not rent or assign any part of the rent of said mortgaged property or demolish, or remove, or substantially alter any building without the written consent of the mortgagee.

*j.* All awards of damages in connection with any condemnation for public use of or injury to any of the property subject to this mortgage are hereby assigned and shall be paid to mortgagee, who may apply the same to payment of the installments last due under said note, and mortgagee is hereby authorized, in the name of the mortgagor, to execute and deliver valid acquittances thereof and to appeal from any such award.

*k.* The mortgagee shall have the right to inspect the mortgaged premises at any reasonable time.

2. Default in any of the covenants or conditions of this instrument or of the note or loan agreement secured hereby shall terminate the mortgagor's right to possession, use, and enjoyment of the property, at the option of the mortgagee or his assigns (it being agreed that the mortgagor shall have such right until default). Upon any such default, the mortgagee shall become the owner of all of the rents and profits accruing after default as security for the indebtedness secured hereby, with the right to enter upon said property for the purpose of collecting such rents and profits. This instrument shall operate as an assignment of any rentals on said property to that extent.

3. The mortgagor covenants and agrees that if he shall fail to pay said indebtedness or any part thereof when due, or shall fail to perform any covenant or agreement of this instrument or the promissory note secured hereby, the entire indebtedness hereby secured shall immediately become due, payable, and collectible without notice, at the option of the mortgagee or assigns, regardless of maturity, and the mortgagee or his assigns may before or after entry sell said property without appraisement (the mortgagor having waived and assigned to the mortgagee all rights of appraisement):

(I) at judicial sale pursuant to the provisions of 28 U.S.C. 2001 (a); or

(II) at the option of the mortgagee, either by auction or by solicitation of sealed bids, for the highest and best bid complying with the terms of sale and manner of payment specified in the published notice of sale, first giving four weeks' notice of the time, terms, and place of such sale, by advertisement not less than once during each of said four weeks in a newspaper published or distributed in the county in which said property is situated, all other notice being hereby waived by the mortgagor (and said mortgagee, or any person on behalf of said mortgagee, may bid with the unpaid indebtedness evidenced by said note). Said sale shall be held at or on the property to be sold or at the Federal [, county, or city/or Commonwealth] courthouse for the county in which the property is located. The mortgagee is hereby authorized to execute for and on behalf of the mortgagor and to deliver to the purchaser at such sale a sufficient conveyance of said property, which conveyance shall contain recitals as to the happening of the default upon which the execution of the power of sale herein granted depends; and the said mortgagor hereby constitutes and appoints the mortgagee or any agent or attorney of the mortgagee, the agent and attorney in fact of said mortgagor to make such recitals and to execute said conveyance and hereby covenants and agrees that the recitals so made shall be effectual to bar all equity or right of redemption, homestead, dower, and all other exemptions of the mortgagor, all of which are hereby expressly waived and conveyed to the mortgagee; or

(III) take any other appropriate action pursuant to state or Federal statute either in state or Federal court or otherwise for the disposition of the property.

In the event of a sale as hereinabove provided, the mortgagor or any person in possession under the mortgagor shall then become and be tenants holding over and shall forthwith deliver possession to the purchaser at such sale or be summarily dispossessed, in accordance with the provisions of law applicable to tenants holding over. The power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are granted as cumulative to the remedies for collection of said indebtedness provided by law.

4. The proceeds of any sale of said property in accordance with the preceding paragraphs shall be applied first to pay the costs and expenses of said sale, the expenses incurred by the mortgagee for the purpose of protecting or maintaining said property, and reasonable attorneys' fees; secondly, to pay the indebtedness secured hereby; and thirdly, to pay any surplus or excess to the person or persons legally entitled thereto.

5. In the event said property is sold at a judicial foreclosure sale or pursuant to the power of sale hereinabove granted, and the proceeds are not sufficient to pay the total indebtedness secured by this instrument and evidenced by said promissory note, the mortgagee will be entitled to a deficiency judgment for the amount of the *deficiency without regard to appraisement.*

6. In the event the mortgagor fails to pay any Federal, state, or local tax assessment, income tax or other tax lien, charge, fee, or other expense charged against the property, the mortgagee is hereby authorized at his option to pay the same. Any sums so paid by the mortgagee shall be added to and become a part of the principal amount of the indebtedness evidenced by said note, subject to the same terms and conditions. If the mortgagor shall pay and discharge the indebtedness evidenced by said promissory note, and shall pay such sums and shall discharge all taxes and liens and the costs, fees, and expenses of making, enforcing, and executing this mortgage, then this mortgage shall be canceled and surrendered.

7. The covenants herein contained shall bind and the benefits and advantages shall inure to the respective successors and assigns of the parties hereto. Whenever used, the singular number shall include the plural, the plural the singular, and the use of any gender shall include all genders.

8. No waiver of any covenant herein or of the obligation secured hereby shall at any time thereafter be held to be a waiver of the terms hereof or of the note secured hereby.

9. In compliance with section 101.106 of the Rules and Regulations of the U.S. Small Business Administration [13 C.F.R. 101.106], this instrument is to be construed and enforced in accordance with applicable Federal law. This Mortgage is to be construed and enforced in accordance with Federal law. Mortgagor hereby waives any rights or immunity purportedly conferred by Commonwealth law limiting Mortgagee's right to a deficiency judgement after either a judicial foreclosure or a foreclosure under the power of sale referred to above.

10. A judicial decree, order, or judgment holding any provision or portion of this instrument invalid or unenforceable shall not in any way impair or preclude the enforcement of the remaining provisions or portions of this instrument.

11. Any written notice to be issued to the mortgagor pursuant to the provisions of this instrument shall be addressed to the mortgagor at **78 CLINTON STREET, PATERSON, NJ 07522** and any written notice to be issued to the mortgagee shall be addressed to the mortgagee at 801 Tom Martin Drive Suite 120, Birmingham, AL 35211.

If any one or more of the provisions contained in this Mortgage shall for any reason be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Mortgage.

IN WITNESS WHEREOF, the mortgagor has executed this instrument and the mortgagee has accepted delivery of this instrument as of the day and year aforesaid.

MORTGAGOR HAS RECEIVED A TRUE COPY OF THIS INSTRUMENT.

STATE OF NEW JERSEY )
COUNTY OF Passaic )

**Individual Execution:**

Ida Dunston
IDA DUNSTON, INDIVIDUALLY

I certify that on this 19 day of June, 20 13, IDA DUNSTON, INDIVIDUALLY (name) personally came before me and stated to my satisfaction that this person (or if more than one, each person):
(A) was the maker of this instrument; and
(B) executed this instrument as his or her own act.

Monique Scott
Notary Public

Monique Scott
(PRINT NOTARY NAME AND TITLE BELOW SIGNATURE)
My Commission Expires: 8-26-2017



**EXHIBIT "A"**

THE PROPERTY CONSISTS OF THE LAND AND ALL THE BUILDINGS AND STRUCTURES ON THE LAND IN THE CITY OF PATERSON, COUNTY OF PASSAIC AND STATE OF NEW JERSEY.

BEING KNOWN AND DESIGNATED AS LOT 7A IN BLOCK 45 AS SHOWN AND LAID DOWN ON A MAP ENTITLED 'FINAL SUBDIVISION MAP, PROPERTY OF PATERSON HABITAT FOR HUMANITY, INC., SECTION TWO, CITY OF PATERSON, PASSAIC COUNTY, N.J. AUGUST 31, 1990, SCALE 1 INCHES IS EQUAL TO 20 FEET RONALD W. HYPKENS, LAND SURVEYOR, WHICH MAP WAS FILED IN THE PASSAIC COUNTY REGISTER'S OFFICE ON FEBRUARY 13, 1991 AS FILED MAP NO. 3293. THE ABOVE PREMISES IS MORE PARTICULARLY DESCRIBED IN ACCORDANCE WITH A SURVEY MADE BY RONALD W. HYPKENS, L.S., DATED OCTOBER 23, 1993, AS FOLLOWS:

BEGINNING AT A POINT IN THE NORTHEASTERLY LINE OF CLINTON STREET SAID POINT BEING DISTANT ON A COURSE OF SOUTH 30 DEGREES 46 MINUTES EAST 175.00 FEET FROM THE INTERSECTION OF SAID LINE WITH SOUTHEASTERLY LINE OF GARFIELD AVENUE, AND RUNNING FROM THENCE

(1) NORTH 59 DEGREES 14 MINUTES EAST 100.00 FEET TO A POINT; THENCE

(2) SOUTH 36 DEGREES 46 MINUTES EAST 18.75 FEET TO A POINT; THENCE

(3) SOUTH 59 DEGREES 14 MINUTES WEST 100.00 FEET TO A POINT IN THE SAID NORTHEASTERLY LINE OF CLINTON STREET, AND THENCE

(4) ALONG THE SAME, NORTH 30 DEGREES 46 MINUTES WEST 18.75 FEET TO THE POINT AND PLACE OF BEGINNING.

LOT 29 BLOCK 204

More commonly known as: **78 CLINTON STREET, PATERSON, NJ 07522**



END OF DOCUMENT

# EXHIBIT B

|  U.S. Small Business Administration | U.S. Small Business Administration NOTE (SECURED DISASTER LOANS) | Date: April 24, 2013 |
|---|---|---|
| | | Loan Amount: $28,100.00 |
| | | Annual Interest Rate: 1.688% |

Application # Loan

1. **PROMISE TO PAY:** In return for a loan, Borrower promises to pay to the order of SBA the amount of **Twenty-Eight Thousand One Hundred And 00/100** Dollars, interest on the unpaid principal balance, and all other amounts required by this Note.

2. **DEFINITIONS:** A) "Collateral" means any property taken as security for payment of this Note or any guarantee of this Note. B) "Guarantor" means each person or entity that signs a guarantee of payment of this Note. C) "Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

3. **PAYMENT TERMS:** Borrower must make all payments at the place SBA designates. Borrower may prepay this Note in part or in full at any time, without notice or penalty. Borrower must pay principal and interest payments of **$101.00** every **month** beginning **Five (5)** months from the date of the Note. SBA will apply each installment payment first to pay interest accrued to the day SBA receives the payment and will then apply any remaining balance to reduce principal. All remaining principal and accrued interest is due and payable **Thirty (30) years** from the date of the Note.

4. **DEFAULT:** Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower: **A)** Fails to comply with any provision of this Note, the Loan Authorization and Agreement, or other Loan Documents; **B)** Defaults on any other SBA loan; **C)** Sells or otherwise transfers, or does not preserve or account to SBA's satisfaction for, any of the Collateral or its proceeds; **D)** Does not disclose, or anyone acting on their behalf does not disclose, any material fact to SBA; **E)** Makes, or anyone acting on their behalf makes, a materially false or misleading representation to SBA; **F)** Defaults on any loan or agreement with another creditor, if SBA believes the default may materially affect Borrower's ability to pay this Note; **G)** Fails to pay any taxes when due; **H)** Becomes the subject of a proceeding under any bankruptcy or insolvency law; **I)** Has a receiver or liquidator appointed for any part of their business or property; **J)** Makes an assignment for the benefit of creditors; **K)** Has any adverse change in financial condition or business operation that SBA believes may materially affect Borrower's ability to pay this Note; **L)** Dies; **M)** Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without SBA's prior written consent; or, **N)** Becomes the subject of a civil or criminal action that SBA believes may materially affect Borrower's ability to pay this Note.

5. **SBA'S RIGHTS IF THERE IS A DEFAULT:** Without notice or demand and without giving up any of its rights, SBA may: **A)** Require immediate payment of all amounts owing under this Note; **B)** Have recourse to collect all amounts owing from any Borrower or Guarantor; **C)** File suit and obtain judgment; **D)** Take possession of any Collateral; or **E)** Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6. **SBA'S GENERAL POWERS:** Without notice and without Borrower's consent, SBA may: **A)** Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses; **B)** Collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If SBA incurs such expenses, it may demand immediate reimbursement from Borrower or add the expenses to the principal balance; **C)** Release anyone obligated to pay this Note; **D)** Compromise, release, renew, extend or substitute any of the Collateral; and **E)** Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7. **FEDERAL LAW APPLIES:** When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8. **GENERAL PROVISIONS:** **A)** All individuals and entities signing this Note are jointly and severally liable. **B)** Borrower waives all suretyship defenses. **C)** Borrower must sign all documents required at any time to comply with the Loan Documents and to enable SBA to acquire, perfect, or maintain SBA's liens on Collateral. **D)** SBA may exercise any of its rights separately or together, as many times and in any order it chooses. SBA may delay or forgo enforcing any of its rights without giving up any of them. **E)** Borrower may not use an oral statement of SBA to contradict or alter the written terms of this Note. **F)** If any part of this Note is unenforceable, all other parts remain in effect. **G)** To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that SBA did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale. **H)** SBA may sell or otherwise transfer this Note.

9. **MISUSE OF LOAN FUNDS:** Anyone who wrongfully misapplies any proceeds of the loan will be civilly liable to SBA for one and one-half times the proceeds disbursed, in addition to other remedies allowed by law.

10. **BORROWER'S NAME(S) AND SIGNATURE(S):** By signing below, each individual or entity acknowledges and accepts personal obligation and full liability under the Note as Borrower.

**Individual Execution:**

ORIGINAL

Ida Dunston
IDA DUNSTON, INDIVIDUALLY

# EXHIBIT C

Consideration $ 47,000.00
Realty Transfer Fee $ 47.00
Recording Fee $ 27.00
Total $ 74.00
By [signature]

124 - DEED - BARGAIN & SALE (Cov. as to Grantor's Acts) R ST-2
CORP. GRANTOR - PL. LANG. (Rev. 10-93)

©1982 BY ALL-STATE LEGAL SUPPLY CO.
One Commerce Drive, Cranford, N.J. 07016

Prepared by: (print signer's name below signature)
[signature]
ANTHONY J. LA SALA, ESQ.

# DEED

This Deed is made on January 24, 1996

**BETWEEN:**

PATERSON HABITAT FOR HUMANITY, INC.

a corporation of the state of New Jersey
having its principal office at 495 East 22nd Street, Paterson, New Jersey referred to as the Grantor,

**AND:**

IDA MAE DUNSTON,

whose post office address is 78 Clinton Street, Paterson, New Jersey referred to as the Grantee.

The words "Grantor" and Grantee" shall mean all Grantors and all Grantees listed above.

**Transfer of Ownership.** The Grantor grants and conveys (transfers ownership of) the property described below to the Grantee. This transfer is made for the sum of Forty-seven Thousand and 00/100 ($47,000.00) Dollars The Grantor acknowledges receipt of this money.

**Tax Map Reference.** (N.J.S.A. 46:15-1.1) Municipality of Paterson
Block No. A0045 Lot No. 7.A Account No.

☐ No property tax identification number is available on the date of this deed. (check box if applicable.)

**Property.** The property consists of the land and all the buildings and structures on the land in the City of Paterson County of Passaic and State of New Jersey. The legal description is:

Being known and designated as Lot 7A in Block 45 as shown and laid down on a map entitled "Final Subdivision Map, Property of Paterson Habitat for Humanity, Inc., Section Two, City of Paterson, Passaic County, N.J. August 31, 1990, Scale 1" -20", Ronald W. Rypkema, Land Surveyor, which map was filed in the Passaic County Register's Office on February 13, 1991 as Filed Map No. 3293.

The above premises is more particularly described in accordance with a survey made by Ronald W. Rypkema, L.S., dated October 25, 1993, as follows:

BEGINNING at a point in the northeasterly line of Clinton Street said point being distant on a course of South 30 degrees 46 minutes East 175.00 feet from the intersection of said line with the southeasterly line of Garfield Avenue, and running from thence
(1) North 59 degrees 14 minutes East 100.00 feet to a point; thence
(2) South 36 degrees 46 minutes East 18.75 feet to a point; thence
(3) South 59 degrees 14 minutes West 100.00 feet to a point in the said northeasterly line of Clinton Street, and thence
(4) Along the same North 30 degrees 46 minutes West 18.75 feet to the point and place of Beginning

Being commonly known as 78 Clinton Street, Paterson, New Jersey.

Being part of the same premises conveyed to Paterson Habitat for Humanity, Inc. by Deed from City of Paterson, dated March 5, 1987 and recorded in the Passaic County Register's Office on June 11, 1987 in Deed Book X-118, Page 319.

RECEIVED
PASSAIC CO. N.J.
96 MAR -1 PM 2:51
FRANK W. SYLVESTER
REGISTER

--U143PG183

**RESERVATIONS, COVENANTS AND RESTRICTIONS**

(to be attached to Deed)

The Commencement Date of these Reservations and Restrictive Covenants shall begin on the date of this Deed (or the date of Occupancy of the Premises by the Grantee, whichever is earlier) and shall terminate on the date of the first non-exempt title transaction occurring after twenty (20) years from the Commencement Date. At the first non-exempt title transaction after the termination date, the Grantor shall execute a document in recordable form evidencing that the Premises has been released from these Reservations and Restrictive Covenants.

THE GRANTOR RESERVES UNTO ITSELF, AND GRANTEE COVENANTS AND AGREES AS FOLLOWS:

A. The Premises shall at all times remain the Primary Residence of the Grantee and Grantee's immediate family.

B. The Grantee shall not rent the Premises or permit it to be occupied by any other party whether or not that party qualifies as a Low Income Household.

C. The Premises shall not be used for any illegal or immoral purpose or in a manner to create a public nuisance.

D. The Premises shall only be owned and occupied by a Low Income Eligible Household. If Grantee at any time hereafter no longer qualifies as a Low Income Eligible Household, Grantee shall so notify the Grantor. This Restriction shall not apply to any Grantee who after acquiring the Premises, through their industry and initiative, increase their family income to an amount above the maximum family income for qualification for a Low Income Eligible Household.

E. Upon the determination that Grantee is violating or otherwise is not in compliance with the restrictions set forth above, Grantor may, at any time thereafter, and upon sixty days written notice to Grantee:

(i) require the grantee to sell and reconvey the Premises;

(ii) designate a Buyer of the Premises to Grantee, or

(iii) repurchase the Premises from Grantee.

In such event the Grantee covenants and agrees to convey the Premises to such Buyer, or to the Grantor, as the case may be, at the Maximum allowable Resale Price defined below.

F. In the event the Grantee elects to no longer utilize the Premises as its Primary Residence, or to sell the Premises, it shall so notify the Grantor in which event the Grantor shall be empowered to exercise its rights set forth in Paragraph E above. The Grantee shall not execute any sale or lease agreement, convey title, or otherwise deliver possession of the Premises to any other party without the prior written approval of the Grantor.

G. The Grantee shall not sell the Premises to anyone other than a Buyer who has been certified by Grantor as an "Eligible Buyer" utilizing, in part, the income verification procedures established by the Grantor to determine qualified Low Income-Eligible Households. The Grantee shall request referrals of Eligible Buyers from pre-established referral lists maintained by the Grantor's Family Selection Committee prior to seeking to sell the Premises. If the Grantor's Family Selection Committee does not refer to Grantee an Eligible Buyer within thirty (30) days of the Notice of Intent to Sell the Premises and no Agreement to purchase the Premises has been executed, the Grantee may propose a Contract to Purchase the Premises to a proposed Eligible Buyer not referred through the Grantor's Family Selection Committee. The purchase price shall not exceed the Maximum Allowable Resale Price. In such event the proposed Buyer must complete all required Household Eligibility forms and submit Gross Annual Income information for verification to the Grantor in order to obtain a written certification from Grantor as an

U143PG184

Eligible Buyer.

H. At resale, all items of property which are permanently affixed to the Premises and/or were included when the unit was originally purchased shall be included in the Maximum Allowable Resale Price. The Grantee must personally certify that either (a) all other items of unaffixed personal property to be included in the resale are also included in the maximum allowable Resale Price, or (b) sold to the Buyer at a reasonable price that has been approved by the Grantor at the time of signing the Agreement to Purchase. Such transfer of funds shall also be certified by the Buyer at the time of closing. In no event shall the purchase of any personal property be made a condition of resale of the Premises.

I. In the event Grantor waives the conditions set forth in G and Grantee obtains a purchaser who wishes to purchase the Premises at a Fair Market Price, Grantor shall have a Right of First Refusal to purchase the Premises as follows:

(i) The Grantee shall serve notice in writing to the Grantor, by certified mail, return receipt requested. The notice shall indicate that the Grantee has a bona fide offer for the sale of the Premises, setting forth the name and address of the person desiring to purchase the Premises and the sale price and terms of payment for sale together with a copy of the written Contract of Sale between the Grantee and proposed Buyer. This notice shall constitute an offer to sell the Premises to the Grantor upon the terms and conditions set forth in the offer.

(ii) Within fourteen (14) days of the written notice, Grantor shall have the right to purchase the Premises in accordance with the terms of the offer. If Grantor fails to exercise its right of purchase. Grantee may sell or convey the Premises to the designated party making the bona fide offer, but only at the same price and terms specified in the notice.

J. The Premises may in the future be included as part of a homeowner's association (the "Association"). In such event, the Grantee, in addition to paying any assessments required by the Association, shall further fully comply with all of the terms, covenants or conditions of the Association and shall maintain the status of a member in good standing of the Association including the payment of dues or assessments which may be imposed by the Association. Any unpaid assessments or charges of the Association shall become a lien on the Premises and as may be provided in the By-Laws of the Association.

K. The restrictions on the transfer of the Premises set forth above shall not apply to the transfer of title under an Exempt Transaction, which is defined below. In the event of a transfer of title under an Exempt Transaction, the successors, grantees, transferees shall nevertheless take title to the Premises, subject to all of the within covenants and Restrictions, and, thereafter, shall be bound to all of the provisions hereof.

**DEFINITIONS**

As used in these Reservations and Restrictive Covenants the following terms shall be defined to mean:

"Arbitration" shall mean a determination made by qualified independent third party selected by the Grantor.

"Base Price" shall mean the price of the Premises recited in the prior Deed to the Premises;

"Certified Household" shall mean any Eligible Household whose estimated total Gross Annual Income has been verified, whose financial references have been approved and who has received written certification as a Low Income-Eligible Household from the Grantor.

"Council" shall mean the Council of Affordable Housing of the New Jersey Department of Community Affairs.

"Eligible Buyer" shall mean a family or persons selected by the Family Selection Committee of the Grantor and who has been certified by such Committee as a Low-Income

--U143PG185



Eligible Household.

"Exempt Transaction" shall mean the following "non-sales" title transactions: (1) Transfer of ownership between husband and wife; (2) Transfer of ownership between former spouses ordered as a result of a judicial decree of divorce or judicial separation (but not including sales to third parties); (3) Transfer of ownership through an Executor's Deed to a Class A Beneficiary; and, (4) Transfer of ownership by court order. (5) Intestate transfers as the result of the death of a Grantee. All other title transfers are non-exempt.

"Fair Market Price" shall mean the unrestricted price of a low income housing unit if sold at a current real estate market rate.

"Gross Annual Income" shall mean the total amount of all sources of a Household's income including, but not limited to salary, wages, interest, tips, dividends, alimony, pensions, social security, business and capital gains, tips and welfare benefits. Generally, gross annual income will be based on those sources of income reported to the Internal Revenue Service (IRS) and/or that can be utilized for the purpose of mortgage approval.

"Grantor" shall mean Paterson Habitat for Humanity, Inc.

"Grantee" shall mean the owner of the Premises.

"Household" shall mean the person or persons occupying the Premises.

"Index" shall mean the measured percentage of change in the median income for a Household of four for the geographic region which includes the City of Paterson using the income guidelines approved for use by the Council.

"Low Income Household" or "Low Income Eligible Household" shall mean a Household whose total Gross Annual income is equal to 50% or less of the median gross income figure established by geographic region and household size using the income guideline approved for use by Council.

"Maximum Allowable Resale Price" shall mean the "Base Price" plus the reasonable value of any capital improvements made to the Premises made by Grantee, increased by a percentage determined by the Index. In the event the parties cannot agree upon the value of the capital improvements made by the Grantee, the value shall be determined by Arbitration.

"Primary Residence" shall mean the Premises wherein a Certified Household maintains continuing residence for no less than nine months of each calendar year.

deedrestrictions- 9/94

U143PG186

**Promises by Grantor.** The Grantor promises that the Grantor has done no act to encumber the property. This promise is called a "covenant as to grantor's acts" (N.J.S.A. 46:4-6). This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the property (such as by making a mortgage or allowing a judgment to be entered against the Grantor,

**Signatures** This Deed is signed and attested to by the Grantor's proper corporate officers as of the date at the top of the first page. Its corporate seal is affixed.

Attested by:

NORMA H. LEONHARD Secretary

By: ANTHONY J. LA SALA, Vice President

**STATE OF NEW JERSEY, COUNTY OF** PASSAIC **SS.:**

**I CERTIFY** that on January 24, 1996

Anthony J. La Sala and Norma H. Leonhard

personally came before me and stated to my satisfaction that this person (or if more than one, each person):
(a) was the maker of the attached deed;
(b) was authorized to and did execute this deed as Vice-President and Secretary

of Paterson Habitat for Humanity, Inc. the entity named in this deed ;and

(c) this deed was made for $ 47,000.00 as the full and actual consideration paid or to be paid for the transfer of title. (Such consideration is defined in N.J.S.A. 46:15-5.)

(Print name and title below signature)

...NOTARY PUBLIC OF NJ
...COMM. EXPIRES
JUNE 5, 1996

--U143PG187

NJC 1846—AFFIDAVIT OF CONSIDERATION RTF-1 (Rev. 1/1/88)

STATE OF NEW JERSEY
AFFIDAVIT OF CONSIDERATION OR EXEMPTION
(c. 49, P.L. 1968)
or
PARTIAL EXEMPTION
(c. 176, P.L. 1975)

ALL-STATE LEGAL SUPPLY CO. One Commerce Drive, Cranford, N. J. 07016

AVS1-1

To Be Recorded With Deed Pursuant to c. 49, P.L. 1968, as amended by c. 225, P.L. 1985 (N.J.S.A. 46:15-5 et seq.)

STATE OF NEW JERSEY } ss.
COUNTY OF PASSAIC

FOR RECORDER'S USE ONLY
Consideration $ 47,000.00
Realty Transfer Fee $ 47.00 C
Date 3/1/96 By [signature]
*Use symbol "C" to indicate that fee is exclusively for county use.

**(1) PARTY OR LEGAL REPRESENTATIVE** (See Instructions #3, 4 and 5 on reverse side)

Deponent, Anthony J. La Sala, being duly sworn according to law upon his/her oath deposes and says that he/she is the Corporate Officer of the Grantor (Grantor, Grantee, Legal Representative, Corporate Officer, Officer of Title Co. Lending Institution, etc.) in a deed dated January 24, 1996, transferring real property identified as Block No. A0045 Lot No. 7.A located at 78 Clinton Street, Paterson, Passaic County (Street Address, Municipality, County) and annexed hereto.

**(2) CONSIDERATION** (See Instruction #6)

Deponent states that, with respect to deed hereto annexed, the actual amount of money and the monetary value of any other thing of value constituting the entire compensation paid or to be paid for the transfer of title to the lands, tenements or other realty, including the remaining amount of any prior mortgage to which the transfer is subject or which is to be assumed and agreed to be paid by the grantee and any other lien or encumbrance thereon not paid, satisfied or removed in connection with the transfer of title is $ 47,000.00

**(3) FULL EXEMPTION FROM FEE** Deponent claims that this deed transaction is fully exempt from the Realty Transfer Fee imposed by c.49, P.L. 1968, for the following reason(s): Explain in detail. (See Instruction #7.) Mere reference to exemption symbol is not sufficient.

**(4) PARTIAL EXEMPTION FROM FEE** *NOTE: All boxes below apply to grantor(s) only. ALL BOXES IN APPROPRIATE CATEGORY MUST BE CHECKED. Failure to do so will void claim for partial exemption. (See Instructions #8 and #9)*

Deponent claims that this deed transaction is exempt from the increased portion of the Realty Transfer Fee imposed by c.176, P.L. 1975 for the following reason(s):

a) SENIOR CITIZEN (See Instruction #8)
- ☐ Grantor(s) 62 yrs. of age or over.*
- ☐ One or two-family residential premises
- ☐ Owned and occupied by grantor(s) at time of sale.
- ☐ No joint owners other than spouse or other qualified exempt owners.

b) BLIND (See Instruction #8)
- ☐ Grantor(s) legally blind.*
- ☐ One or two-family residential premises.
- ☐ Owned and occupied by grantor(s) at time of sale.
- ☐ No joint owners other than spouse or other qualified exempt owners.

DISABLED (See Instruction #8)
- ☐ Grantor(s) permanently and totally disabled.*
- ☐ One or two-family residential premises.
- ☐ Receiving disability payments.
- ☐ Owned and occupied by grantor(s) at time of sale.
- ☐ Not gainfully employed.
- ☐ No joint owners other than spouse or other qualified exempt owners.

*IN THE CASE OF HUSBAND AND WIFE, ONLY ONE GRANTOR NEED QUALIFY.

c) LOW AND MODERATE INCOME HOUSING (See Instruction #8)
- ☒ Affordable According to H.U.D. Standards.
- ☒ Meets Income Requirements of Region.
- ☒ Reserved for Occupancy.
- ☒ Subject to Resale Controls.

d) NEW CONSTRUCTION (See Instruction #9)
- ☐ Entirely new improvement.
- ☐ Not previously used for any purpose.
- ☐ Not previously occupied.

Deponent makes this Affidavit to induce the County Clerk or Register of Deeds to record the deed and accept the fee submitted herewith in accordance with the provisions of c. 49, P.L. 1968.

Subscribed and Sworn to before me this 24th day of January, 1996

[signature]
Anthony J. La Sala (Name of Deponent (type above line))
495 East 22nd Street, Paterson, New Jersey (Address of Deponent)

[signature]
NOTARY PUBLIC OF NJ
MY COMMISSION EXPIRES

FOR OFFICIAL USE ONLY This space for use of County Clerk or Register of Deeds.
Instrument Number ________ County ________
Deed Number ________ Book ________ Page ________
Deed Dated ________ Date Recorded ________

IMPORTANT — BEFORE COMPLETING THIS AFFIDAVIT, PLEASE READ THE INSTRUCTIONS ON THE REVERSE SIDE HEREOF.
This form is prescribed by the Director, Division of Taxation in the Department of the Treasury, as required by law, and may not be altered or amended without the approval of the Director.
ORIGINAL — White copy to be retained by County.
DUPLICATE — Yellow copy to be forwarded by County to Division of Taxation on partial exemption from fee (N.J.A.C. 18:16—8.12).
TRIPLICATE — Pink copy is your file copy.

WHITE AND YELLOW COPIES MUST BE SUBMITTED WITH DEED TO COUNTY RECORDING OFFICER

--U143PG188